IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FLOYD MEDICAL CENTER,            *

    Plaintiff,                  *

vs.                              *
                                        CASE NO. 4:11-CV-15 (CDL)
WAREHOUSE   HOME   FURNISHINGS   *
DISTRIBUTORS,   INC.   d/b/a
FARMERS HOME FURNITURE EMPLOYEE  *
BENEFITS PLAN, ELAP, LLC, and
GROUP & PENSION ADMINISTRATORS,  *

    Defendants.                  *

O R D E R

Plaintiff Floyd Medical Center ("Floyd Medical") brought this action against Defendants Warehouse Home Furnishings Distributors, Inc. d/b/a Farmers Home Furniture Employee Benefits Plan, ELAP, LLC, and Group & Pension Administrators, Inc. (collectively "Defendants") to recover the charges it incurred for treatment of Julie Reece ("Reece"), a participant in a self-funded Employee Welfare Benefits Plan ("Plan") under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), who assigned her rights to benefits under the Plan to Floyd Medical. Presently pending before the Court is Floyd Medical's Motion for Judgment as a Matter of Law (ECF No. 20), claiming Floyd Medical is entitled to the reasonable value of the services it provided to Reece and

arguing the Plan failed to provide a reasonable rate for the services. Defendants also seek judgment as a matter of law, claiming in their Motion for Summary Judgment (ECF No. 21) that all benefits have been paid in accordance with the Plan. For the following reasons, Defendants' motion (ECF No. 21) is granted, and Plaintiff's motion (ECF No. 20) is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable factfinder to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

The following facts, unless otherwise noted, are undisputed.

**I.   Farmers Home Furniture Employee Benefit Plan**

Reece is an employee of Warehouse Home Furnishings Distributors, Inc. d/b/a Farmers Home Furniture ("Farmers Home Furniture"), and is a participant in Farmers Home Furniture Employee Benefit Plan ("Plan"), a self-funded employee welfare benefit plan within the scope of ERISA.  Pl.'s Mot. for J. as a Matter of Law Ex. 4, Plan Document & Summary Plan Description 3, ECF No. 20-4 at 4 of 41 [hereinafter Plan Document & Summary Plan Description].  Farmers Home Furniture is the Sponsor and Administrator of the Plan.  *Id.*  Farmers Home Furniture retained Group & Pension Administrators, Inc. ("GPA") to serve as Claims Administrator to administer claims under the Plan.  *Id.*

In accordance with the Plan, Farmers Home Furniture, acting as Plan Sponsor, allocated certain fiduciary responsibility to ELAP, LLC ("ELAP," "Designated Decision-Maker," or "DDM"), including the discretionary and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the Plan provisions under the "Claim Review and Audit Program."  *Id.* at 4, ECF No. 20-4 at 5 of 41.  The Plan allocates discretionary authority and ultimate decision-making authority to ELAP with respect to any appeals of denied claims.  *Id.*  The Plan also specifies that it expressly intends Farmers Home Furniture, as Plan Administrator, and ELAP, as the Designated Decision Maker, to have maximum legal discretionary

3

authority to: (1) construe and interpret the terms and provisions of the Plan, (2) make determinations regarding issues which relate to eligibility for benefits, (3) decide disputes which may arise relative to a Covered Person's rights, and (4) decide questions of Plan interpretation and those of fact relating to the Plan.  *Id.*

## II. Reece's Treatment at Floyd Medical and the Plan's Claim Review and Audit Program

Reece received diagnostic care and treatment from Floyd Medical.  The charges for that care included $600.00 for "Pharmacy," $76.00 for "Sterile Supply", $1800.00 for "CT Pelvis with Contrast," and $1800.00 for "CT Abdomen with Contrast."  Pl.'s Mot. for J. as a Matter of Law Ex. 5, Floyd Medical Bill, ECF No. 20-7.  Reece assigned all insurance benefits payable to her, including any benefits under her ERISA Plan, to Floyd Medical.  Pl.'s Mot. for J. as a Matter of Law Ex. 6, Floyd Registration Consent, ECF No. 20-8.

Floyd Medical submitted a claim to the Plan for the services it provided to Reece.  Floyd Medical was unable to recover under the Preferred Provider Network ("PPO") Plan coverage because it did not qualify as a PPO under the Plan.  Plan Document & Summary Plan Description 5, ECF No. 20-4 at 6 of 41.  Instead, it was entitled to recover "Covered Charges" based upon "Allowable Claim Limits" as determined under the Plan's

4

"Claim Review and Audit Program." *Id.* at 30, ECF No. 20-4 at 31 of 41.

Under the Claim Review and Audit Program, the Plan "arranged with the 'Designated Decision Maker' ("DDM") for a program of claim review and auditing in order to identify charges billed in error, charges for excessive or unreasonable fees and charges for services which are not medically appropriate." *Id.* at 63, ECF No. 20-5 at 23 of 46. The Plan provides that claims for benefits selected for review and auditing will be reduced for any charges determined to be in excess of "Allowable Claim Limits." *Id.* The Claim Review and Audit Program conducts a "comprehensive review of detailed records including, for example, itemized charges and descriptions of the services and supplies provided." *Id.* The Plan defines Allowable Claim Limits as "charges for services and supplies, listed and included as Covered Medical Expenses under the Plan, which are Medically Necessary for the care and treatment of Illness or Injury, but only to the extent that such fees are within the Allowable Claim Limits." *Id.*

In determining whether a charge is within the Allowable Claim Limit, the Dedicated Decision Maker, ELAP, may rely upon, but is not limited to, certain guidelines outlined in the Claim

Review and Audit section of the Plan. *Id.*[1] The Plan provides the following guidelines for the Allowable Claim Limit for certain charges. The Allowable Claim Limit for charges by a Hospital facility are based on 112% of the Hospital's most recent departmental cost ratio, reported to the Centers for Medicare and Medicaid Services ("CMS"), and published in the American Hospital Directory in the "Medicare Cost Report" ("CMS Cost Ratio"). *Id.* The Allowable Claim Limit for Ambulatory Surgery Centers is based on the Medicare allowed amount for the services in the geographical region, plus 20%. *Id.* at 64, ECF No. 20-5 at 24 of 46. The Allowable Claim Limit for services not otherwise specified by the Plan are calculated based on "industry-standard resources" that include, but are not limited to, "CMS Cost Ratios, Medicare allowed fees (by geographical region), published and publicly available fee and cost lists and comparisons, any resources listed in the categories above, or any combination of such resources that results in the determination of a reasonable expense under the Plan, in the opinion of" ELAP. *Id.* The Allowable Claim Limit is calculated

---

[1] The Plan provides that when used in the Claim Review and Audit section of the Plan, "the term 'Plan Administrator' shall be deemed to mean the 'Designated Decision Maker (DDM)[,]'" or ELAP. Plan Document & Summary Plan Description 63, ECF No. 20-5 at 23 of 46. Thus, the Court will hereinafter refer to "ELAP" where the Plan uses the term Plan Administrator in the context of the Claim Review and Audit Program. It is undisputed that ELAP, and not Farmers Home Furniture as Plan Administrator, made the benefits determination at issue here.

6

using one or more of the industry-standard resources, plus 12%. *Id.* The Plan also provides that ELAP "reserves the right, in its sole discretion, to determine any Allowable Claim Limit amount for certain conditions, services and supplies using industry-standard documentation, uniformly applied without discrimination to any Covered Person." *Id.*

After receiving Floyd Medical's claim for Reece's treatment, ELAP forwarded the claim to Mid Atlantic Medical Review ("Mid Atlantic") for auditing. Defs.' Mot. for Summ. J. Ex. 2, Def. Group & Pension Administrators, Inc.'s Resp. and Objections to Pl.'s First Interrogs. ¶ 2, ECF No. 21-5 at 3 of 61. Mid Atlantic determined the Allowable Claim Limit for Reece's claim was $746.71, which was $3,529.29 less than the amount Floyd Medical billed for the services. Defs.' Mot. For Summ. J. Ex. 5, Audit, ECF No. 21-8. Mid Atlantic reduced the charges based on the adjustment code "M," which defines the Allowable Claim Limit as the "Medicare allowed amount, in geographic region, plus 20%." *Id.*

GPA sent Floyd Medical a Notice of Adverse Benefits Determination ("Adverse Benefits Determination"), explaining the decision to reduce the amount of Floyd Medical's claim by $3,529.29. Defs.' Mot. for Summ. J. Ex. 3, Notice of Adverse Benefits Determination 1, ECF No. 21-6 at 2 of 6. The Adverse Benefits Determination noted the charges were reduced pursuant

7

to the Claim Review and Audit Program, which "limits covered expenses under the Plan to those within the 'Allowable Claim Limits.'" *Id.* The Adverse Benefit Determination explained the charges were reduced "due to apparent billing errors or charges which exceed this Plan's Allowable Claim Limits." *Id.*

### III. Floyd Medical's Appeal of the Allowable Claim Limit Determination

#### A. Floyd Medical's First Appeal

Floyd Medical appealed the Adverse Benefit Determination ("First Appeal Letter"). Defs.' Mot. for Summ. J. Ex. 8, Letter from B. Scott to GPA (Oct. 19, 2010), ECF No. 21-11. According to Floyd Medical's First Appeal Letter, Reece did not have the option of using an in-network facility because GPA chose not to enter into contractual negotiations with Floyd Medical or any other facility in the surrounding area. *Id.* at 2. Floyd Medical claimed it billed reasonable charges for Reece's treatment. *Id.* Floyd Medical further asserted that GPA had "not provided evidence [Floyd Medical's] charges are not reasonable and customary." *Id.* Finally, Floyd Medical noted that GPA had not attempted contract negotiations with any facility in the surrounding area, and thus, Floyd Medical demanded full payment within 30 days of receipt of the First Appeal Letter. *Id.*

8

ELAP reviewed and responded to Floyd Medical's appeal ("Response to First Appeal Letter"). ELAP noted Floyd Medical "expect[ed] to be paid at 100% of billed charges because the Plan does not have a contract with the hospital." Defs.' Mot. for Summ. J. Ex. 6, Letter from C. Waters to B. Scott 1 (Nov. 29, 2010), ECF No. 21-9. ELAP determined, however, that the absence of a contract did not invalidate the determination made through the Claim Review and Audit Program. *Id.* According to the Response to First Appeal Letter, "[a]t issue is the determination by the Plan regarding what constitutes a reasonable charge for consideration under the Plan for covered services." *Id.* at 2. ELAP acknowledged ERISA's provisions, set forth in 29 U.S.C. § 1104(A), (B), and (D), requiring fiduciaries of the Plan to act prudently and pay only the reasonable expenses incurred by the Plan. *Id*. The Response to First Appeal Letter explained that as part of Farmers Home Furniture's efforts to ensure benefits under the Plan are based on reasonable and appropriate levels of expense, the Plan incorporated the Claim Review and Audit Program. *Id.* According to ELAP, the Claim Review and Audit Program "is designed to evaluate the line-item detail of the charges by the provider" to identify "the covered expenses that may be considered for reimbursement." *Id.* Here, the Plan assessed the claim using two available "industry-standard resources" to determine the

9

reasonable cost for the charges. *Id.* The Plan looked at Floyd Medical's CMS Cost Ratios, "[a]s a resource to fairly and accurately identify the true cost for certain services and supplies," and added 12% for those expenses to determine a "reasonable charge." *Id.* The Plan also evaluated "the Medicare allowable amount [for the charges] under the Outpatient Prospective Payment System (OPPS) for the services in the geographic area, and [considered] that amount plus an additional 20% as a reasonable charge." *Id.* Because the Medicare allowable amount provided a greater covered expense, the Plan used that amount to reach the Allowable Claim Limit. *Id.*

ELAP pointed to specific provisions and language in the Plan to support its determination. The Response to First Appeal Letter noted that charges by Hospitals are evaluated under the Claim Review and Audit Program. *Id.* Under the Claim Review and Audit Program, ELAP determines Covered Charges based on the Allowable Claim Limits. *Id.* at 3. The Response to First Appeal Letter pointed to language in the Plan allowing the Allowable Claim Limits to be based on 112% of the Hospital's most recent CMS Cost Ratio or based on the Medicare allowed amount for the services in the geographical region, plus 20%. *Id.* ELAP concluded that based on the information currently available, no additional benefits were payable for Reece's claim. *Id.*

B.   Floyd Medical's Second Appeal

Floyd Medical filed a second appeal as permitted under the Plan ("Second Appeal Letter").  Def.'s Mot. for Summ. J. Ex. 9, Letter From B. Scott to GPA (Jan. 4, 2011), ECF No. 21-12.  In that appeal, Floyd Medical argued that Reece did not have the option of using an in-network facility because GPA chose not to enter contractual negotiations with Floyd Medical or other facilities in the surrounding area.  *Id.* at 2.  Floyd Medical also claimed the "calculations used to determine the Usual and Customary [sic] for [Floyd Medical's] geographic region are incorrect."  *Id.*  It also reiterated the contention asserted in its First Appeal Letter that it was not bound by any contract that may exist between Farmers Home Furniture and GPA.  *Id.*

In its Second Appeal Letter, Floyd Medical argued it had the right to balance bill Reece for the remaining unpaid balance of Floyd Medical's charges.  *Id.*  Floyd Medical asserted Reece was responsible for the entire $3,779.29 balance and demanded full payment within 30 days by either GPA or Reece.  *Id.*  If GPA or Reece did not pay within 30 days, Floyd Medical planned to "commence litigation against both parties."  *Id.*

In response to Floyd Medical's Second Appeal Letter, ELAP replied that "[t]he Plan does not rely on the fees charged by other providers for its calculations."  Defs.' Mot. for Summ. J. Ex. 10, Letter from S. Kelly to B. Scott 1 (Feb. 8, 2011), ECF

11

No. 21-13.  ELAP noted that "[e]very claim evaluated under the Claim Review and Audit Program receives individual attention, and every effort is made to arrive at a fair and reasonable allowance for both the provider and the Plan."  *Id.*  According to ELAP, however, Floyd Medical did not include any additional information that would provide the basis for an independent review, and ELAP again concluded that no additional benefits were payable based on the information available.  *Id.*

### C. Floyd Medical's Complaint

Floyd Medical subsequently filed the present action pursuant to ERISA's civil enforcement provision which authorizes a plan participant or beneficiary to bring an action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Floyd Medical's Complaint seeks to enforce Reece's right to recover benefits under the Plan, pursuant to the assignment of her rights to Floyd Medical.

## DISCUSSION

Floyd Medical claims Defendants wrongfully denied benefits to Reece under 29 U.S.C. § 1132(a)(1)(B). The Eleventh Circuit has articulated the following six-step analysis to guide district courts in reviewing an administrator or fiduciary's benefits decision when it is challenged:

12

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). For the final step, the Eleventh Circuit has determined that "a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* at 1196 (quoting *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008)); *see also id.* at 1195 (noting previous Eleventh Circuit cases applying a heightened standard of arbitrary and capricious review have been implicitly overruled). "Furthermore, the burden remains on the plaintiff

13

to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* (quoting *Doyle*, 542 F.3d at 1360).

The Court begins by determining whether ELAP's benefits denial was *de novo* wrong. Floyd Medical challenges the determination of benefits because it claims the Allowable Claim Limit did not pay the reasonable value of the services Floyd Medical provided to Reece. Floyd Medical points to evidence that the $4,276.00 it billed "represents a reasonable and customary amount of charges for the specific diagnostic care and treatment which was provided" to Reece. Pl.'s Mot. for J. as a Matter of Law Ex. 8, Prevost Aff. ¶ 6, ECF No. 20-10. The question presented in this action, however, is not simply whether the charges were "reasonable" or "customary," but the issue is whether they were covered under the Plan. The Plan provides that for Hospitals and Ambulatory Surgery Centers the reasonable cost for services and supplies is determined through the Plan's Claim Review and Audit Program. Plan Document & Summary Plan Description 5, ECF No. 20-4 at 6 of 41. The Plan further specifies that "[c]harges for services rendered in these facilities will be evaluated under the Claim Review and Audit Program, and Covered Charges will be determined based upon the Allowable Claim Limits." *Id.* at 30, ECF No. 20-4 at 31 of 41. It is undisputed that this process was properly followed in this

14

case. The Plan provides that the Allowable Claim Limit may be based on the Medicare rate for geographic region, plus 20%, which is the amount that Floyd Medical was paid. *Id.* at 64, ECF No. 20-5 at 24 of 46. Accordingly, ELAP's decision was not *de novo* wrong, and the Court must end the inquiry and affirm the decision.

The Court makes the following concluding observations to bolster its ruling. At the hearing on the pending motions, counsel for Floyd Medical conceded that ELAP's decision was consistent with the requirements of the Plan. But, counsel maintained that the Court should go beyond the Plan requirements and make a *de novo* decision that what the Plan covered was not "reasonable." Counsel of course was unable to point the Court to any precedent in support of his novel argument, and the Court observes that accepting such an argument would be entirely inconsistent with, and inappropriately disruptive to, the ERISA statutory framework. Finally, at the hearing, counsel acknowledged that Floyd Medical was not asserting any type of state law claim that was independent of the federal ERISA claim. The representations made by counsel for Floyd Medical at the hearing confirmed what was obvious to the Court prior to the hearing: Defendants' decision to deny Floyd Medical's claim was not wrong. Therefore, Defendants are entitled to judgment as a matter of law.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 21) is granted, and Floyd Medical's Motion for Judgment as a Matter of Law is denied (ECF No. 20).

IT IS SO ORDERED, this 25th day of April, 2012.

                                        S/Clay D. Land
                                            CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE